**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RODERICK EUGENIO FEURTADO, | : | Civil No. 3:25-cv-2307 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN J. GREENE, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

Petitioner Roderick Eugenio Feurtado ("Feurtado") filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2241 alleging that the Federal Bureau of Prisons

("BOP") placed him on the Inmate Financial Responsibility Program ("IFRP") refusal status,

which resulted in a loss of First Step Act ("FSA") time credits and restrictions on his

commissary and telephone privileges. (Doc. 1). The petition is ripe for disposition and, for

the reasons set forth below, the Court will deny the habeas petition.

I.    **Background**

A.    Feurtado's Criminal History

Feurtado is serving a 120-month term of imprisonment, followed by three years of

supervised release, for his conviction of conspiracy to commit wire fraud, imposed by the

United States District Court for the Western District of Pennsylvania. (Doc. 10-2,

Declaration of BOP Case Manager Laura Getz ("Getz Decl."), at 3 ¶ 5; Doc. 10-3, Public

Information Inmate Data). Along with imprisonment and supervised release, the Western

District of Pennsylvania ordered Feurtado to pay a $100.00 special assessment and pay $258,520.00 in restitution. (Doc. 10-4, *United States v. Feurtado*, No. 2:21-cr-476-1 (W.D. Pa.)). Regarding restitution, the Western District of Pennsylvania's written judgment does not state whether Feurtado had to pay it immediately or through installments. *See id.* at 9. However, the written judgment provided the following special instructions regarding the schedule of payments: "The defendant shall pay restitution that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release at a rate of at least 10 percent of his gross monthly earnings. The first payment shall be due within 30 days from the defendant's release from imprisonment." *Id.*

According to BOP documentation submitted by Respondent, Feurtado's projected release date is February 4, 2029, via First Step Act release. (*Id.*). However, a review of the BOP's inmate locator indicates that Feurtado's projected release date is now December 21, 2028.[1]

B.      The Inmate Financial Responsibility Program

The BOP established the IFRP to assist incarcerated individuals with satisfying their court-ordered financial obligations. *See* 28 U.S.C. § 545.10; Program Statement 5380.08, Inmate Financial Responsibility Program, United States Department of Justice, Federal Bureau of Prisons (Aug. 15, 2005) ("PS 5380.08") at 1,

---

[1]    *See* FEDERAL BUREAU OF PRISONS' INMATE LOCATOR, https://www.bop.gov/inmateloc/ (searching Inmate Number 75578-509) (visited March 31, 2026).

https://www.bop.gov/policy/progstat/5380_008.pdf (visited March 31, 2026). Through the IFRP, the BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations," 28 C.F.R. § 545.10, which include, *inter alia*, special assessments, court-ordered restitution, as well as fines and court costs. *See id.* § 545.11(a)(1)-(3). The BOP assists an inmate with financial obligations by having its unit staff "help th[e] inmate develop a financial plan" and "monitor the inmate's progress in meeting that obligation." *Id.* § 545.11.

The process of developing a financial plan for the inmate begins at their initial classification, during which "the unit team shall review [the] inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s)." *Id.* § 545.11(a). The unit staff will then develop a "documented" financial plan for the inmate. *See id.* In creating this plan, BOP staff reviews deposits to the inmate's trust account during the prior six months, deducts IFRP payments made for UNICOR7 or non-UNICOR work assignments, then deducts $75 per month ($450 for six months) from the inmate's account to allow them to have telephone communication through the Inmate Telephone System ("ITS"). *Id.* § 545.11(b). The BOP may require payment from any remaining balance toward restitution. *Id.* The IFRP establishes a minimum payment schedule of $25 per quarter for non-UNICOR or UNICOR Grade 5 inmates and 50 percent of monthly earnings for inmates assigned UNICOR Grades 1 through 4. *Id.* § 545.11(b)(1)-(2).

3

"The inmate is responsible for making satisfactory progress in meeting [their] financial responsibility plan and for providing documentation of these payments to unit staff." *Id.* § 545.11(b). The inmate may make "[p]ayments…from institution resources or non-institution (community) resources." *Id.*

BOP staff are responsible for monitoring the inmate's "[p]articipation and/or progress in the [IFRP]," and conducting a review "each time [they] assess [the] inmate's demonstrated level of responsible behavior." *Id.* § 545.11(c). During the IFRP program review, BOP staff must:

- determine the total funds deposited into the inmate's trust fund account for the previous six months;

- subtract the IFRP payments made by the inmate during the previous six months; and

- subtract $450 (i.e., $75 x 6 months, ITS exclusion).

Any money remaining after the above computation may be considered for IFRP payments, regardless of whether the money is in the inmate's trust fund or phone credit account. The Unit Team has the discretion to consider all monies above that computation to adjust the inmate's IFRP payment plan.

PS 5380.08 at 8. The unit manager has the authority to determine whether an inmate's IFRP payments are commensurate with their ability to pay and makes this determination on a case-by-case basis after considering each inmate's unique circumstances. *See id.* To encourage inmates to pay their court-ordered financial obligations while in BOP custody, the BOP affords certain privileges to inmates who are participating in the IFRP that are unavailable to inmates who refuse to participate. An inmate's refusal to participate in the

4

IFRP or refusal to comply with the provisions of their financial plan "ordinarily shall result in the following:"

(1)    Where applicable, the Parole Commission will be notified of the inmate's failure to participate;

(2)    The inmate will not receive any furlough (other than possibly an emergency or medical furlough);

(3)    The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

(4)    The inmate will not be assigned to any work detail outside the secure perimeter of the facility;

(5)    The inmate will not be placed in UNICOR.  Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months.  Any exceptions to this require approval of the Warden;

(6)    The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7)    The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8)    The inmate will not be placed in a community-based program;

(9)    The inmate will not receive a release gratuity unless approved by the Warden;

(10)    [Reserved]

(11)    The inmate will not receive an incentive for participation in residential drug treatment programs.

28 C.F.R. § 545.11(d).  Additionally, inmates who refuse to participate in the IFRP will not earn First Step Act time credits.  *See* Program Statement 5410.01, First Step Act of 2018—Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), United States Department of Justice, Federal Bureau of Prisons (Nov. 18, 2022) ("PS 5410.01"), at 11 ("If an inmate refuses to participate in required programs (e.g., Inmate Financial Responsibility (FRP), Drug Education, etc.), the inmate will not earn FTCs.  While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs."), https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (visited March 31, 2026).

C.    Feurtado's Inmate Financial Responsibility Plan

On February 23, 2024, Feurtado received his Individualized Needs Plan – Initial Classification, which outlined his financial obligations.  (Doc. 10-2, Getz Decl. at 5-6 ¶ 20; Doc. 10-5, Individualized Needs Plan at 2-5).  Feurtado agreed to participate in the IFRP, paying $25.00 quarterly towards his obligated restitution.  (*Id.* at 2).

On June 25, 2024, Feurtado was placed in IFRP refusal status, because of his refusal to pay towards his financial obligations in accordance with his previously agreed

upon contract. (Doc. 10-2, Getz Decl. at 6 ¶ 23; Doc. 10-8, Inmate History Financial Responsibility; Doc. 10-10, Inmate Activity Record).

On August 26, 2024, Feurtado received another Individualized Needs Plan – Program Review, which outlined his financial obligations. (Doc. 10-2, Getz Decl. at 6 ¶ 20; Doc. 10-5, at 6-9). Feurtado agreed to participate in the IFRP, paying $100.00 monthly towards his obligated restitution. (Doc. 10-5, at 7). It was noted that in the prior six months, he made one payment in the amount of $25.00. (*Id.*).

On December 11, 2024, Feurtado was placed in IFRP refusal status, because of his refusal to pay towards his financial obligations in accordance with his previously agreed upon contract. (Doc. 10-2, Getz Decl. at 6 ¶ 25; Doc. 10-8).

On February 21, 2025, Feurtado received another Individualized Needs Plan – Program Review, which outlined his financial obligations. (Doc. 10-2, Getz Decl. at 5 ¶ 20; Doc. 10-5, at 10-13). Feurtado agreed to participate in the IFRP, paying $25.00 quarterly towards his obligated restitution. (Doc. 10-5, at 11). In the prior six months, Feurtado made payments in the amount of $193.22. (*Id.*).

On August 13, 2025, Feurtado received another Individualized Needs Plan – Program Review, which again outlined his financial obligations. (*Id.* at 14-17). Feurtado agreed to participate in the IFRP, paying $25.00 monthly towards his obligated restitution. (*Id.* at 15). It was noted that in the prior six months, Feurtado made one payment in the amount of $25.00. (*Id.*).

## II.    Legal Standard—The First Step Act

The FSA was enacted by Congress in 2018.  The primary goal of the FSA is to reduce recidivism of federal prisoners upon their release from imprisonment.  18 U.S.C. § 3632(a).  Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within 210 days of December 21, 2018, the date on which the FSA was enacted.  *See* 18 U.S.C. § 3632(a).  The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release.  *See id.*

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FTCs to be applied toward time in pre-release custody or supervised release.  *See* 18 U.S.C. § 3632(d)(4)(A).  An inmate may initially earn 10 days of credit for every 30 days of successful participation.  *See id.*  Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every 30 days of successful participation.  *See id.*

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FTCs. *See id.* § 3632(d)(4)(D)-(E). In addition, an inmate cannot earn FTCs for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." *Id.* § 3632(d)(4)(B). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *Id.* § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). An inmate must also be "successfully participating" in designated programming to earn FSA credits. 28 C.F.R. § 523.41(c)(1). "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." *Id.* § 523.41(c)(2). An eligible inmate will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

9

(i)     Placement in a Special Housing Unit;

(ii)    Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii)   Temporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv)    Placement in mental health/psychiatric holds; or

(v)     "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

28 C.F.R. § 523.41(c)(4).  While participation in time-credit earning programs is voluntary, "[o]pting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate 'opts in[.]'" *Id.* § 523.41(c)(5)(iii).

## III.   Discussion

In his habeas petition, Feurtado requests that the BOP follow the sentencing judge's "instructions" and "not impose cruel and severe punishment by placing [him] on [IFRP] refusal [status]." (Doc. 1, at 7).  He further requests that the BOP fully restore his FSA credits and allow him to have "peace and tranquility" for his mental health.  (*Id.*). Additionally, Feurtado seeks to compel the BOP "to refund the excess funds collected and to reinstate his account status prior to the BOP's designation of 'refusal'." (Doc. 2, at 1). The Court finds that Feurtado's habeas petition must be denied on three grounds.

10

First, the Third Circuit has repeatedly emphasized that "participation in the IFRP is voluntary. The BOP only 'implements' the IFRP after a prisoner has chosen to participate in it." *Jordan v. Holt*, 488 F. App'x 587, 588 (3d Cir. 2012). Thus, Feurtado, who initially agreed to a $25.00 quarterly payment, then agreed to a $100.00 monthly payment, and then agreed again to a $25.00 quarterly payment, "cannot be heard to complain about the 'unlawful action of scheduling [his] restitution payments' after he elected participation in the IFRP." *Id.* (citation omitted).

Second, although Feurtado asserts that he was coerced into signing the IFRP payment plan, he identifies no facts in support of this claim. (*See* Doc. 1-1). Moreover, the fact that Feurtado was "faced with the choice of either meeting his financial responsibilities or losing privileges associated with participation in the IFRP" does not permit him to assert that he was coerced into signing the plan or that he signed his payment plan under duress. *See Griggs v. Zickenfoose*, No. 13-cv-02342, 2014 WL 2042153, at *2 (M.D. Pa. May 19, 2014). Instead, "by voluntarily entering into the BOP's financial program, [Feurtado] personally provided the BOP the authority to collect restitution funds." *Ruffin v. Christensen*, No. 23-cv-01297, 2024 WL 3850451, at *4 (M.D. Pa. Aug. 15, 2024).

Third, and finally, Feurtado's complaints about the BOP placing him in refusal status and the imposition of corresponding consequences, also lack merit. The record reflects that Feurtado refused to participate in the IFRP (by failing to satisfy the agreed-upon payments) on two occasions—from June 25, 2024 until August 12, 2024, and December 11, 2024 until

11

June 5, 2025. (Doc. 10-2, Getz Decl. at 6 ¶¶ 25-27; Doc. 10-8). Because Feurtado failed to satisfy his agreed-upon monthly obligations and was placed in IFRP refusal status, he was not eligible to receive certain FSA time credits. (Doc. 10-2, Getz Decl. at 6 ¶¶ 25-27). Once an inmate agrees to participate in the IFRP, the BOP is authorized to help him develop a financial plan and monitor his progress in meeting his financial obligations. *See* 28 C.F.R. § 545.11. In monitoring the inmate's progress, the BOP may recalculate or modify the inmate's financial plan. *See Duronio v. Werlinger*, 454 F. App'x 71, 73 (3d Cir. 2011) ("We are aware of no holding that would suggest that an inmate is prohibited from contributing additional monies to restitution he owes, especially when doing so—and being placed on IFRP status—confers benefits that would otherwise be lost."). The record confirms that Feurtado voluntarily entered into the IFRP and the BOP's scheduling, modification, and collection of funds. ((Doc. 10-2, Getz Decl. at 6 ¶ 20; Doc. 10-5). The record further confirms that Feurtado failed to satisfy his agreed-upon payments and was thus placed on refusal status. (Doc. 10-2, Getz Decl. at 6 ¶¶ 23-27; Doc. 10-8). Because Feurtado refused to participate in the IFRP, he was not eligible to earn FSA time credits in accordance with BOP policy. *See* PS 5410.01; 28 C.F.R. § 545.11(d).

## IV.    Conclusion

For the foregoing reasons, the Court will deny the petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  (Doc. 1).  A separate Order follows.


Robert D. Mariani
United States District Judge

Dated: April ___/___, 2026